# WINONA AND ST. PETER RAILROAD COMPANY
# v. PLAINVIEW.

## SAME v. ELGIN.

ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

Nos. 171, 172.  Argued January 27, 28, 1892. — Decided February 29, 1892.

In this case, which was a writ of error to the Supreme Court of a State, it was contended that that court did not give to a judgment of a Circuit Court of the United States such faith and credit as it was entitled to under the Constitution and laws of the United States; and that it disregarded the provision of the Constitution of the United States that no State shall pass any law impairing the obligation of a contract. Held, that the first contention was incorrect; that the question as to the impairment of the obligation of a contract was raised for the first time in this court, and was not accurate in fact; and that the writ of error must be dismissed.

By an act of the legislature of the State of Minnesota, approved March 5, 1877, (General Laws of Minnesota of 1877, c. 106,) it was enacted, by sections 4, 5, 6 and 7 thereof, as is printed in the margin.[1]

---

[1] SEC. 4. Whenever any such railroad company, specified in the first section of this act, shall desire aid in the construction of its railroad from any county, town, city or village specified in said first section, it shall make and deliver to the county auditor of such county, the town clerk of such town or the clerk of such incorporated city or village, as the case may be, a definite proposition in writing, signed by the president and secretary of said railroad company, and sealed with its seal, which proposition shall contain a statement of the amount of bonds desired, the time when payable, and whether payable before maturity at the option of such municipality, the rate of interest which they shall bear, and such proposition shall contain a statement specifying when said bonds are to be delivered with reference to the time of the entire or partial construction of said railroad, and may contain a statement that such bonds may be deposited in escrow prior to the delivery to the railroad company; and such proposition shall contain a statement that the said railroad company will, in consideration of said bonds, at the election of such municipality, issue to the municipality from

Purporting to proceed under sections 4 and 7 of that act, the Plainview Railroad Company, a Minnesota corporation, on the

---

which it is to receive the same, such number of the shares of its capital stock as will at par value of such stock correspond with the principal sum of such bonds. In case such bonds are proposed to be deposited in escrow as aforesaid, the proposition shall also state that the certificate of the stock to be exchanged therefor shall be placed with the same depository at the same time, and in that case the proposition shall set forth the full name and residence of the trustee or trustees, who shall be the custodian of the stock of said company and of the bonds of such city, village, town or county; the auditor or clerk with whom any such proposition shall be filed shall immediately endorse thereon the date of its receipt by him, and transcribe the same into the record book of the county, town, city or village, as the case may be, of which he is such clerk.

SEC. 5. The mode of arriving at such mutual agreement as is hereinbefore specified, shall be as follows:

*First* — Upon receiving such proposition, the county auditor of such county, the town clerk of such town, or the clerk of such incorporated city or village, as the case may be, shall immediately publish a notice of an election to be held by the legal voters of such county, town incorporated city or village, at the usual place or places of holding elections therein, and at such time as such clerk may designate, not less than ten (10) days or more than twenty (20) days from the date of such notices, which notice shall contain a substantial statement of the proposition made by said railroad company for the issue of the bonds of such municipality, and shall notify the legal voters thereof to deposit a ballot upon which shall be written or printed the words, "for the railroad proposition;" or the words, "against the railroad proposition." And such notice shall be posted in three (3) public places in each election precinct in the district in which aid is desired, at least seven (7) days before the day of such election, and shall also be published at least twice before such election in one newspaper in such city, village or town, if any is published therein, and if the aid is asked of a county, in one newspaper in each village and city in such county in which a newspaper is published, and if there is no newspaper published in such city, village, town or county, then such notice shall be so published in a newspaper published at the nearest place thereto in which one is published.

*         *         *         *         *         *         *

*Fourth* — If a majority of the legal voters who shall vote upon the question at any election to be held in any such county, town, city or village, in pursuance of the provisions of this act, shall, as indicated by the official returns of any such election, vote "for the railroad proposition," then such mutual agreement for the issue of bonds by such municipality and of stock by such railroad company, as provided in this act, shall be deemed and considered to have been arrived at and perfected, and thereupon such bonds

31st of January, 1878, delivered to the town clerk of the town of Plainview a proposition in writing, signed by the president

---

and stock shall be issued and delivered by the proper officer in conformity with the true intent of such proposition and with the provisions of this act.

\*       \*       \*       \* ·       \*       \*       \*

*And provided further,* That the board of county commissioners of any such county, or the board of supervisors of any such town, or the common council of any such village or city, may, in case it shall deem it for the interest of such county, town, village or city, to do so, waive the issuance by such railroad company of any such stock to such county, town, village or city.

SEC. 6. No bonds shall be delivered to the company under such proposition until the road, branch or extension thereof for the construction of which the aid has been granted shall have been completed ready for the passage of cars continuously from one terminus through or to the district granting the aid or to the nearest point in its line to such district, or from such terminus to such point as the company in its proposition shall have proposed to construct said road where the line of the road shall not lie through the district.

·       ᵗ  \*       \*       \*       \*       \*       \*       \*

SEC. 7. Another mode of arriving at such mutual agreement shall be as follows :

*First* — Within three (3) months after the filing of any such proposition as is specified in the fourth (4th) section of this act with any county auditor, town clerk or clerk of any city or village, as the case may be, the said railroad company shall cause notice to be given as prescribed in the fifth (5th) section of this act, in three (3) public places in each election precinct in the district in which aid is desired, stating that after a day named in said notice, which shall be at least five (5) days after its date, a petition to the proper authorities of such county, town, city or village will be presented to the resident taxpayers of such county, town, city or village for their signatures, asking such authorities to agree to such proposition, and such petition shall be appended to a substantial copy of such proposition.

*Second* — If, within four months after the filing of such proposition with any such county auditor, town clerk, or clerk of any city or village, as the case may be, the said railroad company shall deliver to such clerk a substantial copy or copies of such proposition, so filed, with such petition to the proper authorities of such county, town, city or village, asking such authorities to agree to such proposition appended thereto, bearing the signatures of a majority of the persons residing in such county, town, city or village, who were assessed for taxes upon real or personal estate, in such county, town, city or village, as the case may be, as shown by the last assessment roll of the district of which aid is desired, which signatures shall be verified by the affidavit of some person witnessing such signatures; then

and secretary of the company, containing the statements and specifications required by section 4 of the act, and stating that the amount of the bonds of the town desired by the company was $50,000. The town clerk endorsed on the proposition the date of filing, and transcribed the proposition in his records on March 30, 1878. On the 31st of January, 1878, the company posted in three public places in the town a notice that, after February 6, 1878, a petition to the supervisors of the town, appended to a copy of said proposition, would be presented to the resident taxpayers of the town, asking the supervisors to agree to the proposition. The notice and the proposition were published in a newspaper printed and published in the town.

On the 30th of March, 1878, within three months after the filing of the proposition with the town clerk, the company delivered to him four petitions, in the form required by section 7 of the act, addressed to the town board of supervisors, stating that the petitioners, being residents of the town and assessed for taxes upon real or personal estate therein, as shown by its last assessment roll, asked the supervisors, as the proper authorities of the town, to agree to the proposition of the company to which the petition was appended. The petitions bore the signatures of a majority of the persons residing in the town who were assessed for taxes on real or personal estate therein, as shown by its then latest assessment roll, and the signatures were verified by the affidavits of the persons witnessing such signatures; but the petitions were not signed by a majority of the electors or legal voters of the town. Those petitions were the only ones ever made asking the authorities of the town to agree to the proposition of the company, and they and section 7 of the act constituted the only authority had or claimed for the issue of the bonds hereinafter mentioned. No election was held in the town to author-

such mutual agreement for the issue of bonds by such municipality and of stock by such railroad company shall be deemed and considered to have been arrived at and perfected, and thereupon such bonds and stock shall be issued and delivered in conformity with the true intent and meaning of such proposition, and with the provisions of this act.

ize its supervisors to agree to the proposition or to the issue of any such bonds.

On the 30th of March, 1878, the board of supervisors of the town adopted and placed on file in the office of the town clerk resolutions which recited the proposition of the company, the posting of the notices and the presenting of the petitions, with signatures and affidavits, from which it appeared that a majority of the resident taxpayers of the town, assessed for taxes upon real or personal estate therein, as shown by its last assessment roll, had signed the petitions, and that the construction of the railroad by the company, as set forth in its proposition, would promote the general prosperity and welfare of the taxpayers of the town. The resolutions were, that the proposition of the company was accepted, so far as related to the issue of bonds; that bonds of the town to the amount of $50,000, with interest coupons attached and payable as requested in the proposition, be issued to the company as soon as it should have its railroad completed, with the cars running thereon; and that the issue of stock to the town by the company, in consideration of the bonds, was waived.

The company constructed its railroad, had the cars running thereon, and performed what was stated in the proposition, except that it never issued to the town any stock of the company.

Before any bonds of the town were issued to the company, one George W. Harrington, a resident citizen and taxpayer of the town, brought a suit in the District Court for Wabasha County, in which county the town is situated, against the town and its officers and the railroad company, setting forth the proceedings on which the bonds were to be issued; that they were illegal; and that it was intended to issue the bonds; and praying that the town and its officers, particularly the chairman of the board of supervisors and the town clerk, might be enjoined from issuing, and the railroad company from accepting or receiving, any such bonds. The town answered the complaint, and in January, 1879, the case was tried by the District Court, which, on February 6, 1879, gave judgment for the defendants and dismissed the suit. Har-

rington took an appeal to the Supreme Court of the State, but, before it was perfected, the bonds were issued and delivered to the company. The Supreme Court, on October 6, 1880, reversed the judgment below, its opinion being reported in 27 Minnesota, 224. It held that, under the Constitution of Minnesota, it was not competent for the legislature to authorize any person or class of persons, other than the electors of a town or the officers chosen by such electors, to determine what action, requiring local taxation, the town would take in any particular case; that, therefore, section 7 of chapter 106 of the Laws of 1877, which assumed to empower a majority of the " resident taxpayers," whether they were electors or not, to bind a town to issue its bonds to aid in the construction of a railroad, was unconstitutional and void; and that, although the mode for authorizing the issue of bonds provided by section 7 was invalid, yet, as the same act provided another mode for authorizing such issue, which was valid, and as the bonds need not recite under which of the two provisions of the act they were issued, but only that they were issued under and pursuant to such act generally, and a purchaser would then have the right to presume that they were issued under its valid provisions, and there might thus be *bona fide* purchasers of the bonds, a suit for an injunction would lie to restrain the issuing of the bonds by the town officers under the invalid mode provided by section 7 of the act.

On the 18th of March, 1879, the town board of supervisors passed a resolution that the town issue to the company its bonds in the sum of $50,000, dated on January 1, 1879, to become due on or before 20 years from that date, with interest thereon, payable annually, at seven per cent per annum; that the bonds be signed and issued by the chairman of the board and the town clerk; and that the issue of stock by the company to the town in a corresponding amount was waived. The bonds were issued on the 19th of March, 1879, being one hundred in number, and numbered consecutively from 1 to 100, each purporting to be the bond of the town of Plainview, payable to the Plainview Railroad Company or bearer, for $500, dated January 1, 1879, due on or before January 1, 1899,

with interest at seven per cent per annum, payable annually, according to the conditions of the twenty interest coupons attached, one of them payable January 1, 1880, and one on January 1 of each year thereafter until the maturity of the bond. Each bond contained on its face the following statement: "This bond is issued in pursuance of a mutual agreement between the said town and the said railroad company, which agreement was made in accordance with the laws of the State of Minnesota, and through and by a proposition made by said railroad company, and duly accepted by said town upon petition therefor signed by a majority of the resident taxpayers of said town, said agreement having been fully performed by the said railroad company on its part. This bond is issued in pursuance of the authority given for that purpose by the laws of the State of Minnesota and in compliance with a resolution of the board of supervisors of said town."

The company, on or about July 9, 1879, sold, transferred and delivered the bonds and coupons to citizens of the State of Wisconsin, who purchased the same without notice of any facts invalidating the bonds, and paid the company $50,000 for them. The bonds and coupons were purchased and acquired by Samuel Marshall and Charles F. Ilsley, citizens of Wisconsin, who purchased them in good faith, for value, without notice of any facts invalidating them. On the 29th of January, 1881, Marshall and Ilsley commenced an action at law in the Circuit Court of the United States for the District of Minnesota against the town of Plainview, to recover the amount of 46 coupons for $35 each, cut from said bonds, which coupons fell due January 1, 1881. The action was defended by the town, and was tried before the Circuit Court without a jury, which found in favor of the plaintiffs and entered a judgment in their favor for $1746.98. The opinion of the Circuit Court of the United States is reported in 3 McCrary, 35. It held that the recitals in the bonds were conclusive evidence in favor of a purchaser without further information; that the conditions precedent prescribed by the statute had been complied with; that, as the law under which the bonds were issued had been recognized as valid by the highest court of the State of

Minnesota, before they were purchased by Marshall and Ilsley, no subsequent decision could affect their validity in the hands of such purchasers; and that the rule charging every one with notice of pending suits was inapplicable where negotiable securities constituted the subject matter. The case referred to by the Circuit Court, as that in which the Supreme Court of Minnesota had recognized section 7 of chapter 106 of the Laws of 1877 as constitutional and valid, was that of *State* v. *Town of Highland*, 25 Minnesota, 355, decided January 10, 1879. The Circuit Court arrived at the conclusion that, as the bonds in question had been purchased by Marshall and Ilsley before the case of *Harrington* v. *Plainview Railroad Company* had been decided by the Supreme Court of Minnesota, and that court had said nothing on the subject previously except what was contained in its opinion in *State* v. *Town of Highland*, the bonds were not affected by the decision in the *Harrington Case*. As to the point that the bonds were invalid in the hands of Marshall and Ilsley, from the fact that they were purchased during the pendency of the Harrington suit, the Circuit Court made answer that said purchasers were not parties to that suit and had no knowledge of it, and that the rule that all persons were bound to take notice of a pending suit did not apply to negotiable securities, citing *County of Warren* v. *Marcy*, 97 U. S. 96.

Thereafter, Marshall and Ilsley brought five other suits against the town of Plainview, to recover severally upon coupons cut from said bonds, which coupons became due from year to year, two of which suits were defended by the town, and in all of them judgments were recovered against it, amounting respectively to $1717.31, $4154.08, $2595.57, $771.15 and $3906.22, three of which six judgments the town paid.

Like judgments with those against the town of Plainview were recovered in the Circuit Court of the United States for the District of Minnesota by Marshall and Ilsley against the town of Elgin, Minnesota, and one of the judgments against each of the two towns was brought to this court by a writ of error. Neither of the two judgments exceeding $5000, this court dismissed the writ of error in each case, 106 U. S. 578,

583, for want of jurisdiction in this court, although the defendants in error were holders and owners of bonds to the amount of more than $5000, from which the coupons sued on in the two cases were cut.

On the 3d of March, 1881, an act passed by the legislature of Minnesota was approved by the governor, entitled "An act to authorize the Winona and Saint Peter Railroad Company to purchase the stock and to purchase or lease the property and franchises of the Plainview Railway Company," Special Laws of Minnesota of 1881, c. 414, the provisions of which were as follows : "Section 1. The Winona and Saint Peter railroad company is hereby authorized to purchase the stock or to purchase or lease the property and franchises of the Plainview railway company ; and said last-named company hereby authorized to sell and convey or to lease its property and franchises to the said first-named company, upon such terms as may be agreed upon by the respective boards of directors of said companies, so as to make the property and franchises of the last-named company a part of the property and franchises of said Winona and Saint Peter railroad company to be used and operated by it under its charter. *Provided*, that, any such purchase of the property or franchises of the Plainview railway company shall be made, and all such property held by said Winona and Saint Peter railroad company, subject to all demands, claims and rights of action against said Plainview railway company, arising or growing out of the latter company's having heretofore obtained and disposed of certain bonds and coupons purporting to have been issued by the towns of Plainview, Elgin and Viola to said Plainview railway company, and in taking such transfer under this act said purchasing company shall assume all claims and demands against said Plainview railway company to the extent and value only of the property and franchises so transferred. Sec. 2. The Winona and Saint Peter railroad company is hereby authorized to issue its capital stock to an amount necessary to make and complete the purchase aforesaid. Sec. 3. This act shall take effect and be in force from and after its passage."

In September, 1884, the town of Plainview brought a suit against the Winona and Saint Peter Railroad Company, in the District Court for the county of Wabasha in the State of Minnesota, the complaint in which set forth the making by the Plainview Railroad Company of the proposition in writing and the aforesaid acts of compliance with the provisions of chapter 106 of the Laws of 1877, and the filing with the town clerk of the petitions signed by the taxpayers, and alleged that the petitions were not signed by a majority of the electors or legal voters of the town; that no election was held in the town to authorize the supervisors to agree to the proposition or to issue any bonds; that the board of supervisors adopted the resolutions before referred to without authority or right from the electors of the town or otherwise, the supervisors and the railroad company well knowing that a majority of the electors or legal voters of the town had not signed the petitions and that no election had been held authorizing the passing of the resolutions; that there was no authority to pass the same, or to bind the town thereby, or to issue the bonds; that the bonds were issued and delivered to the company; and that the latter, on or about July 9, 1879, intending to injure and defraud the town and deprive it of any defence to the bonds or coupons as against *bona fide* holders thereof for value, sold and transferred the bonds to citizens of Wisconsin, who purchased the same of the company *bona fide*, without notice of any of the facts invalidating the bonds, and paid the company $50,000 therefor. The complaint then set out the suits and judgments against the town by Marshall and Ilsley, and the passing of the act of March 3, 1881, and averred that the passage of that act was procured by the Winona and Saint Peter Railroad Company, and the act duly accepted and assented to by that company; that the bonds and coupons mentioned in that act were the same before referred to, and the said company under said act issued and disposed of its stock to an amount necessary to make and complete the purchase authorized by the act; and that, about May, 1881, that company, acting solely under the provisions of the act, purchased all the property and franchises of the Plainview Rail-

road Company, of the value of $200,000, and in making such purchase, and as part of the consideration therefor, assumed all claims, demands and rights of action against the Plainview Railroad Company, as provided in the act, including the claim, demand and right of action set forth in the complaint, and agreed to pay the same. The complaint demanded judgment against the Winona and Saint Peter Railroad Company for $50,000, with interest from January 1, 1879, at seven per cent per annum.

The record shows that on the 11th of May, 1881, the Plainview Railroad Company conveyed, by an instrument in writing, to the Winona and Saint Peter Railroad Company all its railroad, about sixteen miles in length, and all its franchises and property, for the consideration of $225,000 paid, " and by virtue of the power and authority conferred upon the parties " by the act of March 3, 1881.

The defendant put in an answer to the complaint, denying its liability, to which answer the plaintiff replied. Evidence was given as to the suit of Harrington and the suits of Marshall and Ilsley against the town, and the case was tried in June, 1885, before the District Court for Wabasha County, which made findings of fact and conclusions of law, on December 26, 1885, and entered a judgment for the plaintiff for $74,451.31, being $50,000 with interest from January 1, 1879, at seven per cent per annum.

The defendant moved for a new trial, which was denied in May, 1886, and it then appealed to the Supreme Court of Minnesota from the order denying the motion. The case was decided by that court April 28, 1887, (36 Minnesota, 505,) and it affirmed the order denying the motion for a new trial, and adjudged that the plaintiff have judgment accordingly. On the mandate of the Supreme Court, the District Court gave judgment for the plaintiff for $80,031.86 damages and $257.09 costs and disbursements, being in all $80,288.95. From that judgment the defendant took a further appeal to the Supreme Court of the State, which court affirmed the judgment below, for the reasons given in the opinion of the court, reported in 36 Minnesota, 505, and directed judgment accordingly, which

was entered in the Supreme Court. To review that judgment, a writ of error was sued out from this court on the allowance of the chief justice of the Supreme Court of Minnesota.

The writ of error in the case of *Winona and Saint Peter Railroad Company* v. *Town of Elgin*, (No. 172,) is presented for consideration at the same time with the case of the town of Plainview, and was argued at the same time on the same briefs. The two cases have gone along together *pari passu* in the lower courts, and the proceedings in them have been alike, *mutatis mutandis*. The bonds in the case of the town of Elgin were for $40,000, being eighty in number, of $500 each, bearing date January 1, 1879, and containing the same recital as in the case of the town of Plainview. The judgments in favor of Marshall and Ilsley against the town of Elgin were five in number, being respectively for $1696.85, $1443.91, $2852.85, $2745.12, and $3175.82, all recovered upon coupons. The judgment of the Supreme Court of Minnesota against the plaintiff in error here in the suit brought against it by the town of Elgin was rendered July 30, 1887, for $64,245.77. In 36 Minnesota, 517, the Supreme Court says that the case of the town of Elgin against the railroad company was argued and submitted with the case of the town of Plainview against the same defendant, and involved the same questions; and that court affirmed the order of the lower court.

In the decision reported in 36 Minnesota, 505, the first opinion was given by Judge Vanderburgh and concurred in by Judge Berry. A second opinion was given by Chief Justice Gilfillan and Judge Dickinson. Judge Mitchell dissented. In the first opinion, it was said that the question of the validity of the bonds was considered and determined in *Harrington* v. *Town of Plainview*, 27 Minnesota, 224; that the bonds were not issued on the vote of the electors of the town, in pursuance of section 5 of chapter 106 of the Laws of 1877, but in pursuance of section 7 of that statute, on the petition of a majority of the resident taxpayers; that the proceedings to procure the bonds were initiated and prosecuted by the railroad company under the act, by filing with the town clerk its

proposition in writing, as provided by section 4 of the act, for the issue to it of the bonds of the town, and thereafter by securing and filing the petition of the taxpayers, as directed by section 7; and that the evidence in the case was sufficient to uphold the finding of the trial court that the bonds in controversy were issued to the Plainview Railroad Company, and by its agents transferred to the Chicago and Northwestern Railroad Company, at their par value, in consideration of the amount due to the latter company, which it had previously advanced in aid of the construction of the other company's railroad.   The first opinion then proceeded as follows: "Before the issuance of the bonds, the action above referred to was commenced to enjoin the same, and, while the case was pending in this court, the bonds were issued and transferred.   The evidence, however, does not warrant the conclusion that there was any actual fraud in the procurement or transfer of the bonds.   Both railway companies were cognizant of the pendency of the action, and of the grounds of the alleged invalidity of the bonds; but the legal questions involved were still open and in dispute, and they were advised and believed them to be legal and valid.   It is affirmed by the trial court, upon sufficient evidence, that, except as appears upon the face of the bonds, Marshall and Ilsley, and others, to whom they were subsequently transferred, had no notice of the suit, and were *bona fide* purchasers and holders for value.   The Chicago and Northwestern Railway Company was a foreign corporation, and the subsequent purchasers of the bonds were and are citizens of other States.   The bonds all recite on their face that they were issued in pursuance of the authority given for that purpose by the laws of the State of Minnesota, and in compliance with a resolution of the board of supervisors of the town, and also 'in pursuance of a mutual agreement, between the said town and the said railroad company, which agreement was made in accordance with the laws of the State of Minnesota, and through and by a proposition made by said railroad company and duly accepted by said town, upon petition therefor signed by a majority of the resident taxpayers of said town, said agreement having been duly performed by said railroad

company on its part.' This court held in the *Harrington Case* that an agreement, consummated by proceedings under the provisions of the statute referred to, between the railway company and the majority of the taxpayers, could not, under the Constitution, be considered as the lawful agreement of the town, nor be of any binding obligation as such, and that bonds issued in pursuance thereof would be void, except in the hands of *bona fide* purchasers."

The first opinion then said, that the bonds were invalid in the hands of the Plainview company, and could not have been enforced by it; that although that company had built its road, there was no agreement made with the town; that the town, in its corporate capacity, had received nothing, been guilty of no laches, and waived nothing, and there was no estoppel; and that it was entitled to be protected against the unauthorized acts of its own officers, when that could be done without injury to third parties, citing *Thomas* v. *City of Richmond*, 12 Wall. 349, 356, and *Town of South Ottawa* v. *Perkins*, 94 U. S. 260. The first opinion also said, that, while the recitals in the bonds were sufficient to put the purchasers upon inquiry as to the authority for the issue of the bonds and the manner in which they were in fact issued, and by the recitals all purchasers were chargeable with notice of the invalidity of the bonds, Marshall and Ilsley had brought suit upon the coupons in the Circuit Court of the United States for the District of Minnesota, and the bonds had been duly adjudged and determined, in a trial upon the merits in that court, to be valid in their hands, and the result of that judgment was to make the bonds valid negotiable securities, held by them as *bona fide* purchasers; that, as the Plainview company and the Winona and Saint Peter company were not parties to that action, the town was not estopped from litigating in the state courts the questions involved in the case; that the judgment of the Circuit Court of the United States could not be reviewed or modified by the state courts; that the result of its decision and judgment was to fix irrevocably the liability of the town for the whole amount of the indebtedness evidenced by the bonds; and that it must be deemed, therefore, to have been settled

conclusively that the bonds had been transferred to parties in whose hands they had become valid and legal obligations against the town.

It was further said, that it was determined conclusively, by the judgment in *Harrington* v. *Town of Plainview*, that the bonds were void in the hands of the Plainview company, that company having had its day in court in that case; that the issuing and disposition of the bonds must be treated by the state courts as unlawful and wrongful; that, as the bonds, when once placed on the market, were liable to pass into the hands of purchasers who would be entitled to enforce the same as valid negotiable securities in the United States courts, it followed that the town had a cause of action for damages; that the Plainview company transferred the bonds for full value, in payment of moneys advanced for building its road, and Marshall and Ilsley paid nearly par for them; that they were treated by all parties as valuable commercial securities, placed on the market and sold, and enforced as such against the town; and that, as the bonds were invalid and the Plainview company acquired no title to them as obligations of the town, it could not claim to be entitled to the proceeds of them as its property.

It was further said that, as the Plainview company received the full face value of the bonds, the amount of the recovery would be the same whether the suit was one for money had and received or one for a conversion; that the allegations of the complaint and the findings of fact were sufficient to support the action in either form; that the title to the bonds had been confirmed in the present holders of them, who had recovered, or would recover, the full amount thereof; that the liability of the town had been fixed through the acts of the Plainview company in procuring and negotiating the bonds, which acts were unauthorized and wrongful; that such proceedings as would result in the enforcement of the bonds must be presumed to have been intended and contemplated by the Plainview company, either in its own hands or by purchasers who might occupy a more advantageous position, and it could not be permitted to object that the bonds were of no value, or

allege its own wrong, for the purpose of defeating the action, (citing *Comstock* v. *Hier*, 73 N. Y. 269; *Lamb* v. *Clark*, 15 Pick. 193, 197;) and that the town was not estopped or concluded by the result of the suit of Marshall and Ilsley, to which the Plainview company was not a party.

The first opinion further held that, under the provision of the act of March 3, 1881, that the Winona and Saint Peter company should make the purchase from the Plainview company "subject to all demands, claims and rights of action against said Plainview Railway Company arising or growing out of the latter company's having heretofore obtained and disposed of certain bonds and coupons purporting to have been issued by the towns" named to the Plainview company, the Winona and Saint Peter company acquired the property and franchises of the Plainview company by virtue of that act, and of course took the grant *cum onere* and subject to the provisions and conditions of the act. The conclusion was that the town was entitled to recover, and that the order denying a new trial should be affirmed.

The second opinion concurred in the conclusion of the first opinion, but based the responsibility of the company on the following considerations, viz.: That the company, having procured the unauthorized execution and delivery to itself of the bonds, in form expressing the obligation of the town, and having negotiated them so that they had come into the hands of parties who had enforced a recovery upon them by proper action in a competent tribunal, was answerable for its own unauthorized acts, which had resulted in that injury to the town, unless the recovery upon the bonds was to be deemed to be too remote a consequence to afford a ground of legal liability; that, as to the acts of the company, the injurious consequence was not remote, but proximate; that, when the company procured and disposed of the bonds, it must be deemed to have contemplated that the town should pay the bonds, either voluntarily or by legal compulsion; that it made no difference if the judgment by which the liability of the town to pay the bonds had been conclusively established was erroneous; and that that did not make remote the damage complained of.

The Federal questions alleged to be involved in these cases are thus stated by the plaintiff in error: (1) Did the Supreme Court of Minnesota, in rendering its judgments in these cases, fail to give to the judgments of the United States Circuit Court in the Marshall and Ilsley cases such faith and credit as they were entitled to under the Constitution and laws of the United States? (2) Did it, in rendering these judgments, disregard the provision of the Constitution of the United States that no State shall pass any law impairing the obligation of a contract? They are otherwise stated in another of the briefs for the plaintiff in error as follows: (1) The Supreme Court of Minnesota, in rendering the judgments under review, disregarded the provision of the Constitution of the United States that no State shall pass any law impairing the obligation of a contract, in that it erroneously decided that the contracts and bonds of the towns were invalid, and on that ground gave effect to the act of March 3, 1881, as making the Winona and Saint Peter Railroad Company liable for the transfer of the bonds; (2) The Supreme Court, in rendering its judgments in these cases, disregarded the Constitution and laws of the United States in deciding that the Winona and Saint Peter Railroad Company was liable to the towns, because it was responsible for the consequences to them of the judgments in the Marshall and Ilsley cases, although the company would not have been liable but for said judgments.

The towns have moved to dismiss the writs of error for want of jurisdiction in this court, on the ground that the records present no Federal question.

*Mr. Lloyd W. Bowers* (with whom was *Mr. Thomas Wilson* on the brief) for plaintiff in error.

I. It is not necessary, in order that a subsequent statute shall impair a previous contract's obligation, that the statute should itself be made the reason for declaring the contract invalid or for restricting the contract's full and proper operation. Even if, as here, the state court declares the contract invalid on grounds independent of the later statute, still if the de-

clared invalidity of the contract, though placed upon such independent or general grounds, is made the reason for giving the subsequent statute an effect which it could not have but for the contract's invalidity, the contract is impaired by the later act. The essential thing is only that the subsequent act be given an effect which it cannot properly have if the contract is valid. An inconsistency between the subsequent statute, as judicially given effect, and the rights growing out of the contract, correctly construed, makes a case of impairment of the obligation of the contract. *Bridge Proprietors* v. *Hoboken Co.*, 1 Wall. 116, 144, 145; *Delmas* v. *Merchants Ins. Co.*, 14 Wall. 661; *University* v. *People*, 99 U. S. 309; *Wright* v. *Nagle*, 101 U. S. 791, 793, 794; *Louisville Gas Co.* v. *Citizens' Gas Co.*, 115 U. S. 683, 696; *Southwestern Railroad* v. *Wright*, 116 U. S. 231; *Vicksburg &c. Railroad* v. *Dennis*, 116 U. S. 665; *Given* v. *Wright*, 117 U. S. 648; *Chicago, Burlington &c. Railroad* v. *Guffey*, 120 U. S. 569; *Hoadley* v. *San Francisco*, 124 U. S. 639; *New Orleans Water Works* v. *Louisiana Sugar Co.*, 125 U. S. 18; *Yazoo & Miss. Valley Railroad* v. *Thomas*, 132 U. S. 174.

It is the effect actually given to a statute, subsequent to a contract and claimed to impair it, which determines whether, if the contract exists, the statute does in fact impair it. The statute, as construed by the state court, and with the operation there accorded it, is what this court looks at to decide whether a contract has had its obligation impaired.

II. It is settled on principle and by the express adjudications of this court that due effect is not given to the judgments of Federal courts sitting in a particular State unless they are accorded such effect as would in a like case, under similar circumstances, be accorded to the judgments of the state courts of equal authority in such State; and the question whether a state court has given such effect to any such judgment is a question arising under the Constitution and laws of the United States and falls within the jurisdiction of this court. *Crescent Live Stock Co.* v. *Butchers' Union*, 120 U. S. 141; *Embry* v. *Palmer*, 107 U. S. 3; *Dupasseur* v. *Rochereau*, 21 Wall. 130.

Did the Supreme Court of Minnesota in these cases give to

the judgments of the United States Circuit Court in Marshall and Ilsley's cases such force and effect as it would have allowed them had they been rendered by it? That it did not hardly admits of discussion; and it follows that it did not accord to them such credit and effect as it should have accorded under the Constitution.

To break the force of this conclusion counsel are understood to argue that the state courts are not bound to give full faith and credit, or any faith and credit, to judgments of the Federal courts except in a suit and between parties where such judgments would operate as a technical estoppel. This court has in well-considered language answered this contention. Speaking of the Federal courts, it says: "Their judgment or decree when rendered is binding and perfect between the parties until reversed, without regard to any adverse opinion or judgment of any other court of merely concurrent jurisdiction. Its integrity, its validity, and its effect are complete in all respects between all parties in every suit and in every forum where it is legitimately produced as the foundation of an action, or of a defence, either by plea or in proof, as it would be in any other circumstances. While it remains in force it determines the rights of the parties between themselves, and may be carried into execution in due course of law to its full extent, furnishing a complete protection to all who act in compliance with its mandate." *Crescent Live Stock Co.* v. *Butchers' Union,* 120 U. S. 141, 157. The learned counsel of the defendants in error rely on the case of *Dupasseur* v. *Rochereau,* 21 Wall. 130, which they claim is on all fours with this case and decisive of this question.

If I have intelligently read that case, all it decides is that, inasmuch as the judgment of the United States Circuit Court relied on by Dupasseur as a defence did not touch or affect the rights of either party or any question involved in that suit, the state court acted properly in not regarding it. It has no application to the question to which it is cited. *Green* v. *Van Buskirk,* 5 Wall. 307; *S. C.* 7 Wall. 139; *Crapo* v. *Kelly,* 16 Wall. 610; *Factors' & Traders' Ins. Co.* v. *Murphy,* 111 U. S. 738; *Crescent Live Stock Co.* v. *Butchers' Union,* 120 U. S. 141.

*Mr. Cushman K. Davis* and *Mr. Frank B. Kellogg* for defendants in error. *Mr. C. W. Bunn* was with them on the brief.

MR. JUSTICE BLATCHFORD, after stating the case, delivered the opinion of the court.

To present a Federal question on the ground that full faith and credit were not given by the state court to the judgments of the Circuit Court of the United States in the Marshall and Ilsley cases, it must appear that the state court denied to the plaintiff in error, within the terms of § 709 of the Revised Statutes, "some title, right, privilege or immunity" held by the plaintiff in error under the judgments of the Circuit Court of the United States in those cases, and claimed by it in the state court under the Constitution or a statute of the United States; and that the decision of the state court was against the title, right, privilege or immunity specially set up or claimed by the plaintiff in error under such Constitution or statute. This does not appear by the records. The Marshall and Ilsley cases were suits by citizens of Wisconsin against the towns. Neither the plaintiff in error nor the Plainview company was a party to those suits, nor was any one in privity with either company such party. Those cases settled only the question whether the towns were liable to Marshall and Ilsley on the bonds. They did not settle the rights of the towns, and of the Plainview company or the plaintiff in error, as between each other, with regard to the bonds. The Circuit Court of the United States sustained the validity of the bonds on the ground that Marshall and Ilsley were *bona fide* holders of them. The fact that the Supreme Court of Minnesota, in the present cases, did not acquiesce in the correctness of the decision of the Circuit Court of the United States, did not constitute a Federal question. Neither the Constitution of the United States nor any act of Congress guarantees to a suitor that the same rule of law shall be applied to him by a state court which would be applied if his citizenship were such that his suit might be brought in a Federal court. *Dupasseur* v.

*Rochereau,* 21 Wall. 130; *Brooks* v. *Missouri,* 124 U. S. 394; *French* v. *Hopkins,* 124 U. S. 524; *Chappell* v. *Bradshaw,* 128 U. S. 132; *Clark* v. *Pennsylvania,* 128 U. S. 395; *Hale* v. *Akers,* 132 U. S. 554; *Manning* v. *French,* 133 U. S. 186; *Giles* v. *Little,* 134 U. S. 645; *County of Cook* v. *Calumet & Chicago Canal Co.,* 138 U. S. 635.

The cases cited by the plaintiff in error, of *Green* v. *Van Buskirk,* 5 Wall. 307, and 7 Wall. 139; *Crapo* v. *Kelly,* 16 Wall. 610; *Factors' and Traders' Ins. Co.* v. *Murphy,* 111 U. S. 738; and *Crescent Live Stock Co.* v. *Butchers'. Union,* 120 U. S. 141, are not applicable to the present cases.

The state court gave to the decisions of the Circuit Court of the United States all the effect which they could possibly have, namely, the conclusive settlement of the liability of the towns on the bonds to Marshall and Ilsley, as *bona fide* purchasers. The right of action of the towns depended upon sustaining the Marshall and Ilsley judgments as conclusive and not to be reviewed by the state courts. It was an essential element of the suits of the towns to show that they had been legally compelled to pay the bonds, in suits by *bona fide* holders of them. In pursuance of that claim, the state court held that the judgments of the Circuit Court of the United States were valid and conclusive in favor of the towns in the present suits. There was no question before the Circuit Court of the United States as to the liability of the towns to the Plainview company upon the bonds. The decisions of the Circuit Court of the United States held that Marshall and Ilsley, as *bona fide* purchasers of the bonds, acquired rights which were superior to those of the Plainview company. The judgments in the present suits are founded on the fact that the wrongful acts of the Plainview company enabled Marshall and Ilsley to acquire those rights.

The contention that the act of March 3, 1881, impaired the obligation of a contract is raised for the first time in this court. The records do not show that any such proposition was set up in, or considered by, the state court. *Butler* v. *Gage,* 138 U. S. 52.

No Federal question was involved in *Harrington* v. *Town*

*of Plainview,* 27. Minnesota, 224; but the bonds were held invalid on grounds independent of the act of March 3, 1881. That decision was made in October, 1880, before the act of March 3, 1881, was passed, and was followed by the state court in the present cases. The act of 1881 had no bearing upon the question of the validity of the bonds, and the state court gave to that act no effect on that question; so that these cases fall within the principle of *N. O. Water Works Co.* v. *La. Sugar Refining Co.,* 125 U. S. 18, 38, 39, because the state court decided them just as if the act of March 3, 1881, had not been passed. There was a perfect right of action in the towns against the Plainview company before the act of 1881 was passed; and such liability of the Plainview company was what the plaintiff in error assumed by proceeding under the act of 1881. That statute did not impose, and was not the cause of, such liability, but simply allowed the plaintiff in error to contract to assume such liability. The act of 1881 does not affect any prior contract. It merely declares that, if the Plainview company was liable to the towns for having obtained and disposed of the bonds, the plaintiff in error, if it should purchase the property and franchises of the Plainview company, must assume the liability of that company to the towns; and the plaintiff in error accepted and acted under the terms of the statute, on the express condition that it should be liable to the towns if the Plainview company were so liable.

The Plainview company could have raised no such question based on the act of 1881 as the plaintiff in error now seeks to raise. The bonds had been declared void by the state court, as between the Plainview company and the towns, in a suit to which the town of Plainview and the Plainview company were parties. The company had made the bonds, which were invalid in its hands, valid in the hands of *bona fide* purchasers, by transferring them. This took place before the act of 1881 was passed, and a right of action arose at that time in favor of the towns and against the Plainview company. Such right of action was made fruitless by the purchase of the property and franchises of the Plainview company by the plaintiff in error. It was necessary for the legislature to authorize the

sale and purchase, in order to make them valid, and, as a condition of such purchase, the statute imposed the liability in question on the plaintiff in error. The liability expressly covered all demands, claims and rights of action against the Plainview company arising out of its having "obtained and disposed of" the bonds and coupons purporting to have been issued by the towns. Therefore, the only question in the present suits left to be determined by the state court was whether, as the Plainview company had disposed of the bonds and coupons to *bona fide* purchasers, who had enforced them against the towns, a cause of action was created thereby in favor of the towns against the Plainview company. Inasmuch as, if these suits had been between the towns and the Plainview company, no Federal question would have been presented, there can be none in the present suits.

This court has jurisdiction only when the state court has given effect to a legislative enactment which impairs the obligation of a prior contract. No such thing exists in the present cases. The act of 1881 did not attempt to render invalid any contract between the towns and the Plainview company. Although the plaintiff in error was held liable by the state court by virtue of the act of 1881, that did not raise a Federal question, because the liability was one assumed voluntarily by the plaintiff in error. The liability of the Plainview company must first be established, before the act of 1881 can have any effect. The Supreme Court of Minnesota held the bonds invalid by reason of provisions in the constitution of the State, which were in force at the time of the passage of the act of 1877; and it did not hold them invalid by reason of the act of 1881. *Bethell* v. *Demaret*, 10 Wall. 537; *West Tenn. Bank* v. *Citizens' Bank of La.*, 13 Wall. 432, and 14 Wall. 9; *Delmas* v. *Ins. Co.*, 14 Wall. 661, 666; *Tarver* v. *Keach*, 15 Wall. 67; *Stevenson* v. *Williams*, 19 Wall. 572; *N. O. Water Works Co.* v. *Louisiana Sugar Refining Co.*, 125 U. S. 18, 35.

Moreover, the liability of the Plainview company to the towns, which is sought to be enforced in the present suits against the plaintiff in error, was founded on tort, and did not arise out of any contract relations. That liability was what

was assumed by the plaintiff in error; and no question can arise as to the impairment by the act of 1881 of the obligation of any contract.

The writs of error must be                                    *Dismissed.*

Mr. Justice Brewer did not sit in these cases or take any part in their decision.