# BUSHNELL *v.* CROOKE MINING & SMELTING COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF COLORADO.

No. 195. Argued and submitted April 4, 5, 1893. — Decided April 17, 1893.

A federal question, suggested for the first time in a petition for a rehearing, after judgment in the highest court of a State, is not properly raised so as to authorize this court to review the decision of that court.

The decision in the state court in this case clearly presented no federal question; as no right, immunity or authority under the Constitution or laws of the United States was set up by the plaintiffs in error, or denied by the Supreme Court of the State, nor did the judgment of the latter court necessarily involve any such question, or the denial of any such right.

MOTION to dismiss. The case is stated in the opinion.

*Mr. A. R. Bushnell* in person for himself and others plaintiffs in error, and in opposition to the motion.

*Mr. Frederic D. McKenney*, for defendant in error and in support of the motion.

*Mr. C. S. Thomas* and Mr. *W. H. Bryant* filed a brief in support of the motion.

MR. JUSTICE JACKSON delivered the opinion of the court.

This was an action of ejectment brought by the defendant in error in the district court of Hinsdale County, State of Colorado, against the plaintiffs in error to recover possession of a certain portion of the surface location of a mining claim on Ute Mountain in said county and State. The suit grew out of conflicting and interfering locations of mining claims by the parties. The defendant in error was the owner or claimant of a mining location, called the Annie lode, while the plaintiffs in error were the owners of a claim called the Monitor lode. The claim of the latter was first located, but when the plaintiffs in error applied for a patent the defendant in error filed an adverse claim to a portion of the same location, and thereafter, under section 2326 of the Revised Statutes of the United States, and within the time prescribed therein, the defendant in error commenced this action in the state court to recover possession of the portion of the surface location which was in interference and in controversy between the parties.

In its complaint or declaration it is alleged that it is the owner of the Annie lode mining claim, and that defendants below had, at a certain date, entered upon and ever since wrongfully held possession of a part of said claim specifically described, and that the action was in support of plaintiff's adverse claim to such portion of the surface location. The answer of the defendants (plaintiffs in error) interposed a gen-

eral denial of all the allegations contained in the complaint or declaration.

The question presented on the trial of the controversy, under the pleadings, was purely one of fact, and had reference to the true direction which the Monitor lode or vein took after encountering a fault, obstruction or interruption at a point south of the discovery shaft sunk thereon. It was claimed by the plaintiff below that the true vein or lode of the Monitor claim did not bear westwardly so as to cross the Annie lode, but that its true direction was southeastwardly across the line of its location, and was not within the distance of one hundred and fifty feet from the centre of the Annie lode.

The court charged the jury fully and clearly upon this question of fact, as follows:

"1st. The court charges you that the defendants have applied for a patent from the United States on what is claimed by them as the Monitor lode mining claim, in Galena mining district in this county. The plaintiff company has brought this action in ejectment in support of an adverse claim made and filed by it to a part thereof described in the complaint as lying within the boundaries of what is claimed by the plaintiff as the Annie lode.

"2d. The court charges you that if the original locators of the Monitor lode within the time required by law sunk a sufficient discovery shaft thereon, posted at the point of discovery a sufficient location notice, and properly put out their boundary posts marking their surface boundaries, and, on June 20, 1875, recorded their claim in the office of the county recorder by a sufficient location certificate, in compliance with the law, and the owners thereof have ever since then performed labor or made improvements thereon each year to the amount of one hundred dollars or more then the plaintiff company's original grantor, John Dougherty, in attempting to locate the Annie lode to include a part of such surface ground and in sinking the discovery shaft thereon in October, 1878, was *prima facie* a trespasser in so doing, and the plaintiff cannot recover in this action unless it shows that he was not a trespasser in so doing.

"3d. The court charges you that the plaintiff claims that the Monitor lode claim was never properly located, and that the vein on which its discovery shaft is sunk does not run down through its surface ground as located to the southwest, but that it runs off from its surface ground through its southeast side line at a point about — feet from its discovery shaft, and that by reason thereof Dougherty [plaintiff's grantor] was not a trespasser in locating the Annie lode discovery shaft and a part of its surface ground within the boundary stakes of the Monitor lode."

"9th. The court charges you that the question here is: Is the course of the Monitor vein from the discovery shaft down the mountain towards the southwest, along the line claimed by defendants, or off through the southeast side line of the Monitor lode surface grounds or otherwise, as claimed by plaintiff? And the court further charges you that upon this question the presumption is that the course of the vein is as located, and the plaintiff company must prove that the course of the vein is not as located; otherwise, on this point, plaintiff cannot recover, and your verdict shall be for the defendants.

"10th. The court charges you that it is not sufficient that the plaintiff merely raises a doubt in your minds as to whether the Monitor vein runs as the lode is staked or not. The plaintiff must satisfy you by a preponderance of the testimony that the lode does not run as staked; otherwise, upon this question, you will find for the defendants.

"11th. The court charges you that the discoverer and prior locator of a lode or vein has a right to stake his lode according to his best judgment as to where it runs.

"12th. Such prior locator has a right to move and change his boundary stakes upon his lode and take his ground thereon within the legal limits to suit himself at any time within sixty days after the date of his location or discovery notice."

"14th. The court charges you that when a vein branches in its course a prior locator has a legal right to follow with his location whichever branch of it he chooses at the time of making such location."

"16th. The court instructs the jury in the law of this case

that if the locators of the Monitor mine made the location on the Monitor lode or vein and staked it as running down the mountain in the direction of the Annie vein in controversy, and uniting therewith or running parallel thereto substantially through the centre of the surface ground of the Monitor lode claim, the said Monitor locators or their assignees are entitled to the whole of said vein as staked, even if the alleged Enterprise vein crosses said Monitor vein and runs in the course of the Monitor vein as staked, provided that at such crossing the said veins course so together that it is simply conjectural that said 'Monitor' lode is crossed by said so-called 'Enterprise' vein and does not continue in its course as staked."

"18th. The court instructs you that it is of no consequence where the so-called Annie vein runs in any part of its course if Dougherty [the plaintiff's grantor] was a trespasser in locating it. A trespasser's location is entirely void."

The court then refused to give the following instructions for the plaintiffs in error:

"13. The court charges you that a prospector in locating his vein is not required to follow it through a fault or other obstruction which interposes solid country rock in its course, but in such case he may follow with his location any vein that continues on from the point of such obstruction in the general course of his original vein."

"15. The court charges you that if a prospector in locating his lode discovered by a first location secures continuous vein matter substantially along through the centre of his surface ground in a continuous general direction, and so that the extension of his end lines will include between them all of his surface ground, he will hold the same and every part thereof against all subsequent claimants."

It thus appears that the question at issue, under the pleadings and at the trial, was as to the true course of the Monitor lode or vein down the mountain south of its discovery shaft. The jury found the following verdict in favor of the defendant in error: "We, the jury, find the issues joined for the plaintiff, and that it is the owner of and entitled to the possession of the ground described in the complaint."

The plaintiffs in error moved for a new trial on the ground of error in the charge to the jury, and because of the refusal of the court to instruct the jury as requested, and for various reasons, such as the admission of improper testimony offered by the plaintiff below, and the refusal to admit proper testimony offered by the defendants below, and other alleged errors and irregularities committed in the progress of the trial, which are not brought under review in the present case.

A new trial being refused an appeal was taken to the Supreme Court of Colorado, which held that there was no error in the instructions given to the jury, nor in the refusal to give those requested by the plaintiff in error, and affirmed the judgment of the lower court. The Supreme Court of Colorado rested its judgment and affirmance upon the general proposition that the trial court had correctly stated to the jury the principal point in controversy, and had left it properly to them to determine as a matter of fact what was the course of the Monitor lode. The Supreme Court said: "The controlling issue in the case, we think, was fully understood by the jury, and was clearly stated by the court in the 9th instruction, viz.: 'The principal point in the controversy is, upon what vein was the Monitor claim located or what is the course of said vein. The defendants allege and seek to prove that the location was made upon a vein which runs from the discovery shaft of the Monitor across and towards the vein upon which the Annie claim was located, while the plaintiff asserts and seeks to prove that the location was made upon a vein which runs from the Monitor shaft down and nearly parallel with the Annie lode, and which empties into or connects with the Ulè lode. This is the principal point in controversy, and to determine which claim is best supported by testimony and reason is the province and duty of the jury.'"

After the decision had been rendered by the Supreme Court of the State a petition for rehearing was presented by the plaintiffs in error, which, for the first time, sought to present the question whether section 2322 of the Revised Statutes of the United States gave to the appellants "' the exclusive right

of possession' and enjoyment of all other veins and lodes having their apexes within the Monitor surface ground, which would give to these appellants beyond all question the so-called 'Enterprise' that is alleged to 'cross' the 'Monitor' on the surface; and certainly a vein that is thus our own cannot be used by one who has no interest either in the 'Monitor' or 'Enterprise' title to create any question of lode crossing between them or any other question of conflict. Under such circumstance there is but one grant, and it is all the 'Monitor' grant and its rights and title, and such grant is in nowise severable into a part 'Monitor' and a part 'Enterprise,' no separate life or vitality being given to the said so-called 'Enterprise.'"

The application for rehearing being denied, the present writ of error was brought to have the judgment of the Supreme Court of Colorado reviewed and reversed. The defendants in error have moved to dismiss the writ or affirm the judgment. The motion to dismiss is based upon several grounds. The principal and only ground which need be noticed, however, is that the record presents no question of a federal character such as will give this court jurisdiction to review the judgment complained of.

It is plainly manifest that neither the pleadings nor the instructions given and refused present any federal question, and an examination of the opinion of the Supreme Court affirming the action of the trial court as to instructions given, as well as its refusal to give instructions asked by the defendants below, fails to disclose the presence of any federal question. It does not appear from the record that any right, privilege or immunity under the Constitution or laws of the United States was specially set up or claimed by the defendant below, or that any such right was denied them, or was even passed upon by the Supreme Court of the State, nor does it ap ar, from anything disclosed in the record, that the necessary ffect in law of the judgment was the denial of any right claimed under the laws of the United States.

The decision of the Supreme Court of Colorado in no way brought into question the validity or even construction of any

federal statute, and it certainly did not deny to the plaintiffs in error any right arising out of the construction of the federal statutes. It was said by the Chief Justice, in *Cook County* v. *Calumet and Chicago Canal Co.*, 138 U. S. 635, 653 : "The validity of a statute is not drawn in question every time rights claimed under such statute are controverted, nor is the validity of an authority every time an act done by such authority is disputed."

The attempt to raise for the first time a federal question in a petition for rehearing, after judgment, even assuming that the petition presented any such question, is clearly too late. It has been repeatedly decided by this court that a federal question, when suggested for the first time in a petition for rehearing after judgment, is not properly raised so as to authorize this court to review the decision of the highest court of the State. *Texas & Pacific Railway* v. *Southern Pacific Railroad*, 137 U. S. 48, 54; *Butler* v. *Gage*, 138 U. S. 52; *Winona & St. Peter Railroad* v. *Plainview*, 143 U. S. 371; *Leeper* v. *Texas*, 139 U. S. 462.

In the case of *Doe* v. *City of Mobile*, 9 How. 451, it was held that under the twenty-fifth section of the Judiciary Act this court "cannot reëxamine the decision of a state court upon a question of boundary between coterminous proprietors of lands depending upon local laws."

The question involved in the present case turned largely upon the provisions of § 3149, 2 Mills' Annotated Stats. of Colorado, 1788, and the decisions of the Supreme Court of that State construing the same, as shown by the case of *Patterson* v. *Hitchcock*, 3 Colorado, 533, which limited the width of mining claims to 150 feet in width on each side of the centre of the lode or vein at the surface. The controverted question in the case at bar turned upon which direction the Monitor lode properly ran south of the discovery shaft, and it being found by the jury that the lode or vein did not bear westwardly toward the Annie lode, but southeastwardly and across the western side line of the Monitor claim at a distance exceeding 150 feet from the centre of the Annie lode, it followed that the claim of the plaintiff below was sustained,

and the jury accordingly returned its verdict that the plaintiff below was entitled to the possession thereof.

The question thus presented and decided involved no construction of any federal statute, nor did it become necessary to determine the rights of the parties under the federal mining statutes.

In *Roby* v. *Colehour*, 146 U. S. 153, 159, Mr Justice Harlan, speaking for the court, said : " Our jurisdiction being invoked upon the ground that a right or immunity, specially set up and claimed under the Constitution or authority of the United States, has been denied by the judgment sought to be reviewed, it must appear from the record of the case either that the right, so set up and claimed, was expressly denied, or that such was the necessary effect in law of the judgment."

Applying this rule to the case at bar, there is clearly presented no federal question, for no right, immunity or authority under the Constitution or laws of the United States was set up by the plaintiffs in error, or denied by the Supreme Court of Colorado, nor did the judgment of that court necessarily involve any such question, or the denial of any such right. We are, therefore, of opinion that the motion to dismiss is well made, and should be allowed, and it is accordingly so ordered.

*Dismissed.*

Mr. Justice Field did not sit in this case, or take part in its decision.